# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF OREGON

IN RE )
) Bankruptcy Case
EDWARD CHARLES BOLLINGER, ) No. 10-62344-fra13
)
Debtor. ) MEMORANDUM OPINION

This matter comes before the Court on Deutsche Bank Trust Company Americas' (Deutsche Bank) motion to alter or amend the order confirming Debtor Edward Bollinger's (Debtor) second amended Chapter 13 plan.

Debtor owns a "4-plex" in Salem, Oregon (the property), which he holds for income/investment purposes. Deutsche Bank holds a note and trust deed on the property. Debtor's second amended plan proposed to "cram down" the value of Deutsche Bank's secured claim to $225,000,[1] to be paid at $1,208 per month at 5% interest, with the claim to be paid in full by proceeds of a sale or refinance to be accomplished by April 30, 2013 (the balloon payment).

/ / / / / /
/ / / / / /
/ / / / / /
/ / / / / /

---

[1] The balance owed as of filing was approximately $264,000.

MEMORANDUM OPINION-1

The second modified plan drew multiple objections, one of which was by Deutsche Bank The Bank argued the 2013 date for sale or refinance was too remote and that the balloon payment provision violated 11 U.S.C. § 1325(a)(5)(B)(iii)(I)'s[2] requirement that "periodic payments" be in "equal monthly amounts."

A hearing on confirmation was convened on March 8, 2011. The Court heard argument by counsel on the § 1325(a)(5)(B)(iii)(I) issue. At the conclusion of the hearing the Court announced its ruling that confirmation of the plan as presented would be denied because the 2013 sale/refinance deadline was too generous. The Court went on to state it would confirm a plan with certain amendments referenced below. The ruling did not specifically comment on the "periodic payments" issue.

On May 23, 2011, the order confirming the second modified plan was entered. Exhibit 1 thereto sets out the material amendments, amongst which was a March 31, 2012, deadline to sell or refinance the property and pay the cram-down value with the proceeds. If the deadline was not met, Deutsche Bank would be given relief from stay to foreclose. The amendments also allowed Deutsche Bank immediate relief from stay for the limited purpose of taking all actions necessary in furtherance of conducting a non-judicial foreclosure sale on the property such that any sale could occur as quickly as April 2, 2012, but no earlier. The practical effect of these amendments was to move the balloon payment up approximately 13 months from the original deadline.

Deutsche Bank then timely filed the instant motion to alter or amend, to which Debtor has responded. After oral argument the matter was taken under advisement.

The instant motion is one under FRCP 59 (made applicable by FRBP 9023).[3] FRCP 59(e) allows the court to "alter or amend a judgment," if amongst other grounds, it committed a "manifest error of law." Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir. 2011) (internal citations omitted). Deutsche Bank argues the Court's manifest error was confirming a plan with the balloon payment. Having reviewed the matter, it appears Deutsche Bank is correct.

---

[2] Unless otherwise noted, all future statutory references are to Title 11 of the United States Code.

[3] Deutsche Bank also based its motion on § 105. For the reasons discussed below, the Court need not address whether that statute gives it the power to set aside the confirmation order.

MEMORANDUM OPINION-2

Section 1325(a)(5)(B) is the so-called "cram down" provision in Chapter 13 which allows a debtor to modify the treatment of secured claims over objection if certain criteria are met. The subsection at issue, § 1325(a)(5)(B)(iii)(I) provides that if a debtor proposes to pay a secured claim "in the form of periodic payments, such payments shall be in equal monthly amounts."[4] Deutsche Bank argues Debtor's payments on its secured claim are "periodic" and thus, in the event of objection to the proposed treatment,[5] must be "in equal monthly amounts." Debtor argues the balloon payment can stand alone as somehow detached from the monthly payments proposed, and is not a "periodic" payment. Debtor cites several oral rulings by other judges in this District to that effect.[6]

In resolving a dispute over the meaning of a statute, courts must begin with its plain language, United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989), which must be read in light of the design of the statute as a whole and its object and policy. Crandon v. U.S., 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 997 (1990). Where the language is plain, "the sole function of the courts-at least where the disposition required by the text is not absurd-is to enforce it according to its terms." Lamie v. United States Tr., 540 U.S. 526, 534, 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004) (internal quotation omitted).[7]

/ / / / / /

/ / / / / /

---

[4] Section 1325(a)(5)(B) also requires that the value, as of the plan's effective date, of Debtor's payments over the plan's course, equal the allowed amount of the secured claim. This means Debtor must pay a discount factor, which is translated into an interest rate. § 1325(a)(5)(B)(ii).

[5] Section 1325(a)(5)(A) allows for payment by any means or schedule if the secured creditor accepts the plan. Further, § 1325(a)(5)(C) allows for treatment of secured claims by surrender of the collateral. Neither of these subsections apply to the case at bar.

[6] See, In re Meredith, Case # 11-30227-rld13 (Bankr. D. Or. May 5, 2011) (Dunn, J.) (oral ruling, finding the statute ambiguous and allowing a balloon payment); In re Davis, Case # 10-39945-elp13 (Bankr. D. Or. May 26, 2011) (Perris, J.) (oral ruling, following Meredith).

[7] Neither Deutsche Bank nor Debtor argues application of the statute under the facts at bar would be "absurd."

MEMORANDUM OPINION-3

The Bankruptcy Code does not define the term "periodic payments." When a term in a statute is undefined the court is to give it its ordinary meaning. Hamilton v. Lanning, __ U.S. __, 130 S.Ct. 2464, 2471, 177 L.Ed.2d 23 (2010).

> Authoritative dictionaries . . . universally agree that the word "periodic" simply refers to an event that occurs repeatedly or regularly. *See Webster's Third New International Dictionary* 1680 (1981) ( "occurring at regular intervals"); *Merriam–Webster Online Dictionary* ("occurring or recurring at regular intervals; occurring repeatedly from time to time"); *Black's Law Dictionary* 1165 (8th ed.2004) (defining "periodic payment" as "[o]ne of a series of payments made over time instead of a one-time payment for the full amount"); *see also* 5 Lundin § 448.1 (noting that most chapter 13 plans provide for monthly payments).

Hamilton v. Wells Fargo (In re Hamilton), 401 B.R. 539, 544 (1st Cir. BAP 2009).[8] Under Hamilton, a "periodic payment" must be equal to the payment that preceded it. Id. at 543. See, also, In re Wagner, 342 B.R. 766, 772 (Bankr. E. D. Tenn. 2006) (§ 1325(a)(5)(B)(iii)(I) requires that payments be equal once they begin, and to continue to be equal until they end). Both Wagner and Hamilton hold the statute does not differentiate between balloon payments and prior monthly payments, and that all are encompassed in the term "periodic payments." This is correct, and consistent with the language of the statute, and its object and policy. Crandon, 494 U.S. at 158.

Section 1325(a)(5)(B)(iii)(I) is a product of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA).[9] In In re Sanchez, 384 B.R. 574 (Bankr. D. Or. 2008), this court quoted with approval the following from In re Erwin, 376 B.R. 897, 901 (Bankr. C.D. Ill. 2007):

> Prior to BAPCPA, it was not uncommon for some Chapter 13 plans to provide for backloaded payments, such as balloon payments. Another form of backloading involved graduated or stepup payment plans, where the payments started out smaller and increased over time. Secured creditors, particularly those secured by a vehicle, viewed this as unfair, exposing them to undue risk in light of the constant depreciation of their collateral.

---

[8] Similarly, in In re Sanchez, 384 B.R. 574 (Bankr. D. Or. 2008), this court in *dicta* cited with approval Royals v. Massey (In re Denton), 370 B.R. 441, 445 (Bankr. S.D. Ga. 2007), which held the term "periodic" means "payments that recur at regular intervals." Sanchez, 384 B.R. at 579 (denying confirmation of a "stepped payment" plan).

[9] Pub.L. 109–8, April 20, 2005, 119 Stat. 23.

MEMORANDUM OPINION-4

> Other plans, filed by debtors whose employment is seasonal, provided for reduced payments or no payments at all during certain months of the year, or called for payments to be made quarterly or semi-annually, rather than monthly, based upon the peculiarities of the debtor's income stream. Secured creditors had similar complaints with those plans.
>
> In response to those creditor concerns, Congress enacted the equal payment provision and a companion provision extending the concept of adequate protection, formerly a preconfirmation requirement, to postconfirmation plan payments. 11 U.S.C. § 1325(a)(5)(B)(iii)(II). The equal payment provision prevents debtors from backloading payments to secured creditors or paying them other than on a monthly basis.

Sanchez, 384 B.R. at 576-77.[10] Similarly, the court in In re Acosta, 2009 WL 2849096 (Bankr. N.D. Cal. May 7, 2009) noted that "undoubtedly one of the reasons Congress enacted § 1325(a)(5)(B)(iii)(I)" was to curb the abuses resulting from confirmed plans with balloon payments, whereby the debtors dismissed the case if unable to timely sell or refinance, and worse, sometimes re-filed and then "asked for another four or five illusory years." Id. at *3.

From the Court's research, it appears every published decision to consider balloon payments in the context at bar has held § 1325(a)(5)(B)(iii)(I) forbids them, with many of them specifically agreeing with Erwin and Acosta as to the statute's object and policy. See e.g., Hamilton, 401 B.R at 543 (statute enacted in response to creditors' concerns about balloon and quarterly payments so as to prevent backloading); In re Luckett, 2007 WL 3125278, *2 (Bankr. E.D. Wis. October 24, 2007) (quoting Erwin for policy); In re Wallace, 2007 WL 3531551, *1 (Bankr. M. D. N. C. Nov. 12, 2007); In re Newberry, 2007 WL 2029312, *3 (Bankr. D. Vt. July 10, 2007); In re Lemieux, 347 B.R. 460, 463-64 (Bankr. D. Mass. 2006); Wagner, 342 B.R. at 772; In re Gray, 2008 WL 5068849, *4 (Bankr. D. Puerto Rico Nov. 25, 2008) (adopting anti-backloading policy behind statute).[11] Despite my respected colleagues' oral rulings, see, f.n. 6, infra, for the

---

[10] Despite agreeing on the statute's purpose, Sanchez nevertheless disagreed with Erwin for various reasons as to whether § 1325(a)(5)(B)(iii)(I), in conjunction with other Code provisions, permitted stepped payments to secured creditors to allow room for debtors' attorney's fees to be paid. Sanchez, 384 B.R. at 578-79.

[11] One case, In re Davis, 343 B.R. 326, 328 (Bankr. M.D. Fla. 2006) could by extension be construed to allow balloon payments in limited circumstances. There, the debtor proposed under § 1322(b)(5) to cure an arrearage on
(continued...)

MEMORANDUM OPINION-5

reasons stated above, this judge finds that the majority rule is correct. To hold the balloon payment at bar should be construed as outside of a "periodic payment" is not consistent with the statute's object and policy.

It must be said that Erwin and Acosta do not provide any sources for their holdings regarding the purpose of the statute. There is scant, if any, formal legislative history revealing Congress' purposes. The most likely conclusion is that the language requiring equal periodic payments is a straightforward prohibition of repayment schemes that allocate the bulk of the payments to some point in the future. Balloon payments are a common feature in consumer and commercial finance: if Congress had intended to permit the use of the technique in chapter 13 plans it could have easily done so by adding such authority to the plain language of the statute.

In short: the plain language of 11 U.S.C. § 1325(a)(5)(B)(iii)(I) requires repayment plans to secured creditors to provide for equal periodic payments, which necessarily excludes balloon payments. The prohibition is consistent with the overall policies of Chapter 13 and the Bankruptcy Code, and cannot be seen as absurd or anomalous. [12]

The order confirming Debtor's second modified plan was manifest error. It will be vacated and an order denying confirmation entered. That order will give Debtor 30 days to file and notice an amended plan.

/ / / / / /
/ / / / / /
/ / / / / /
/ / / / / /
/ / / / / /

---

[11](...continued) long-term secured debt in unequal payments. The court held § 1322(e) which refers the parties back to the underlying agreement and non-bankruptcy law as to the amount necessary for cure, rendered § 1325(a)(5)(B)(iii)(I) inapplicable. Davis has been criticized. See, Hamilton, 401 B.R. 545-46. In any event, its rationale rests on §§ 1322(b)(5) and 1322(e), which here are inapplicable.

[12] 11 U.S.C. § 1325(a)(5)(B)(iii)(I) does not, of course, prohibit a single payment in full at any time during the course of the plan, assuming all other elements of §§1325 and 1322 have been complied with. Where the collateral is real property adequate protection payments appropriate under §361 maybe addressed in a plan or separately.

MEMORANDUM OPINION-6

The above constitute my findings of fact and conclusions of law under FRBP 7052. They shall not be separately stated.

FRANK R. ALLEY, III
Chief Bankruptcy Judge

MEMORANDUM OPINION-7